## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS - LUBBOCK DIVISION

| | | |
|---|---|---|
| **CLINT LONG, individually, and** | § | |
| **next friend of C.L.** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **No. 5:21-CV-111-H** |
| | § | |
| **JAYTON-GIRARD** | § | |
| **INDEPENDENT SCHOOL** | § | |
| **DISTRICT, ET AL.,** | § | |
| Defendants. | § | |

## PLAINTIFF'S JURISDICTIONAL BRIEF

Pursuant to this Court's Order [ECF Doc. 7] Plaintiff files this brief addressing this Court's jurisdiction over the instant case.

Summarizing, JGISD's Answer claims that it did nothing wrong. Since JGISD is unwilling to admit it violated the Open Meeting Act, this case is subject to mootness exceptions detailed here and in *Plaintiff's First Amended Complaint.*

**Capability of repetition and potential to evade review –** Because JGISD claims it did nothing wrong, JGISD will likely again violate the Texas Open Meetings Act when the next seasonal flu or other health challenge arises.

**Voluntary cessation** – The burden rests with JGISD to show that the voluntary cessation exception to mootness does not apply to Plaintiff's claims. No structural legal barrier exists to prevent reimposition of the mask mandate or other COVID-related policies and legislation by secret committee.

# I.   JGISD'S POLICY BACKGROUND.

1.     In March of 2020, Jayton-Girard Independent School District ("JGISD") gave its superintendent carte blanch "authority to make emergency modifications to District **policies** as needed, including **without limit**. . . "[1]

> Motion made to allow the superintendent to make decisions relating to emergency modifications due to COVID-19.
> - Consideration and action on a resolution delegating to the superintendent authority to make emergency modifications to District policies as needed, including without limit, closure of schools, arranging instruction via distance/virtual learning platforms, and the expenditure of public funds arising from the Governor declared State of Disaster and to mitigate public health risks during the COVID-19 worldwide pandemic.
> 6 in favor, 1 against – (for: Kathy Owen, Connie Martinez, Cole Carpenter, B.J. Baldridge, L'Rae Lee, Cody Stanaland Against: Amanda McGee)

*Exhibit 1, March 26, 2020, Board Meeting Minutes (underlining added)*

2.     JGISD's superintendent formed a secret committee which met in secret, with no known published agenda, no published minutes, and created a policy requiring mandatory masking ("Mask Policy") of all students within the school districts, as well as other COVID-related policies.[2]

3.     Some elements of these policies were recognized quickly, such as the general rule that every student must use some sort of face covering. However, the JGISD policy regarding face covering use was not implemented evenly, as

---

[1] A true copy of the minutes is attached as Exhibit 1; the minutes are online at https://www.jaytonjaybirds.com/apps/pages/index.jsp?uREC_ID=1026175&type=d&pREC_ID=1331261, and admissible as a public document under F.R.E. 901(b)(7). The veracity of the minutes is also supported by the Declaration of Warren V. Norred, attached post-signature. (All links were last checked on June 10, 2021.)
[2] Plaintiff objects to the Declaration of Lyle Lackey (ECF No. 10-3) offered by Defendant, as it constitutes inadmissible hearsay.

demonstrated by the photos in Exhibit 8 of Plaintiff's Original Complaint showing crowds of students not masked.

4.     As the Defendant's Answer admits, the Mask Policy does not address how individuals could seek an exception for medical, religious, or other reason could have such an exemption adjudicated. Further, The JGISD 2020-2021 Reopening Plan which JGISD so proudly presents to this Court has no date of creation and no authors listed on it. Nor is there a set of minutes showing its adoption by the JGISD Board of Trustees when it was originally created and implemented. (Without minutes showing its adoption, Defendant's assertion of the Reopening Plan is a judicial admission of another Open Meetings violation.)

5.     JGISD has asserted that the Mask Policy was merely a "plan" that its superintendant put together and thus not a policy which was governed by the Open Meetings Act. But the JGISD Board of Trustees had to vote to "continue" the COVID policies in March 2021; if it were truly all up to the superintendent as Defendant's claim then such a vote would be unnecessary. Further, the Board voted in April to approve JGISD's COVID policies, leaving the strange question of why the Board needed to vote on the mere plan, or where the policy was developed if the Board was indeed voting on a policy? *See Defendant's Answer, para. 25, 33.*

6.     JGISD asserts that circumvent the Texas Open Meetings Act violation by giving unlimited emergency authority to its Superintendent, then pretend that

anything that he did with that authority is not a policy development, playing games with the words "plan" versus "policy" as though a committee formed by JGISD's superintendent is not bound by TOMA.

7.     COVID-19 may warrant unusual measures, but a government body cannot merely assert an emergency and then have multiple-month committee meetings to develop policies and ignore the Texas Open Meetings Act.

8.     JGISD vigorously enforced the Mask Policy, including barring C.L. from attending school because of his refusal, though the JGISD has voted on no policy that would prevent C.L. from attending school.

9.     On May 6th, 2021, Plaintiff filed an *Original Petition* in Texas state court, seeking a temporary restraining order and injunction while bringing claims for violations of the Texas Open Meetings Act, the free public education clause of the Texas Constitution, the parental right to determine medical treatment of minor children under Tex. Fam. Code Sec. 153.073(a)(3), equal protection and due process clauses of the Texas constitution, Fourteenth Amendment to the US Constitution, and unlawful *ultra vires* enforcement.

10.    On May 14th, 2021, JGISD made mask wearing by students voluntary.

11.    On May 20th, 2021, the spring term at Jayton-Girard concluded.

12.    Governor Abbott's GA-36 ordered the TEA to revise its guidance on masks to eliminate face coverings starting June 5, 2021.

## II.     ARGUMENTS AND AUTHORITIES

### A.     School Board Governance and Policy Adoption

13.     The Texas Education Code ("TEC") governs public school operations. *Morath v. The Texas Taxpayer & Student Fairness Coal*., 490 S.W.3d 826, 834 (Tex. 2016).

14.     When the Texas Legislature creates laws that require public schools to act, public schools then develop policies to implement those laws. Laws are not self-defining policies. Public schools are tasked with creating policies pursuant to the TEC, such as dress codes[3], alcohol and drug use[4], student safety[5], expulsion[6], Student Expression[7], Bilingual education[8], and emergency management[9].

15.     School boards perform their duty under Texas law by putting the policy on the school board agenda, developing the policy openly, and then passing the policy during a meeting where the discussion is listed on an agenda, and then stakeholders can see what passed by looking at the minutes of these public meetings.

---

[3] https://pol.tasb.org/Policy/Download/765?filename=FNCA(LEGAL).pdf
[4] https://pol.tasb.org/Policy/Download/765?filename=FNCF(LEGAL).pdf
[5] https://pol.tasb.org/Policy/Download/765?filename=FFF(LEGAL).pdf
[6] https://pol.tasb.org/Policy/Download/765?filename=FOD(LEGAL).pdf
[7] https://pol.tasb.org/Policy/Download/765?filename=FNA(LEGAL).pdf
[8] https://pol.tasb.org/Policy/Download/765?filename=EHBE(LEGAL).pdf
[9] https://pol.tasb.org/Policy/Download/765?filename=GRC(LEGAL).pdf

16.     The Texas Education Authority ("TEA") often assists public schools with policy development.[10] That assistance can come in the form of a model policy, but ISD boards are responsible for governance.

17.     The executive orders of the Texas governor, such as GA -36, are asserted to have the effect of laws. Those orders do not have details about masking, in the same way that the TEC does not include specifics about dress codes – the specifics are created by school boards and their administrators. Those policies are developed in the open, as required by the Texas Open Meetings Act requires.

**B.      The Mootness Doctrine**

18.      Under Article III of the U.S. Constitution, the jurisdiction of federal courts is limited to actual, ongoing cases and controversies. U.S. Const. art. III, § 2, cl. 1.

19.     Article III mootness is derived from the constitutional requirement that judicial power be exercised only in "cases" or "controversies." *Liner v. Jafco*, 375 U.S. 301, 306 n. 3 (1964).

20.     Usually, a case or controversy must exist throughout judicial proceedings, and not just when the lawsuit is filed or when review is granted by an appellate court. *Lewis v. Continental Bank Corp*., 494 U.S. 472, 477 (1990).

21.     The dispute must concern "live" issues and generally, the plaintiffs must have a personal interest in the outcome of the case. *Id.*

---

[10] See https://tea.texas.gov/about-tea/welcome-and-overview.

22.    The Supreme Court has described mootness as follows:

> The "personal stake" aspect of mootness doctrine ... serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving. One commentator has defined mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980), quoting Henry P. Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L. J. 1363, 1384 (1973).

## C.    Exceptions to the Mootness Doctrine

### i.    The "Capable of Repetition, Yet Evading Review" Exception.

23.    Some disputes or injuries may arise in the short-term and have the potential for recurrence, but always fail to last long enough to permit federal judicial review. In such a situation, federal courts have justified an exception to the mootness doctrine where there are "exceptional situations," where the plaintiff "can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983) (citation omitted).

24.    The Supreme Court of the United States has instructed lower courts on the application of this doctrine, holding:

> [I]n the absence of a class action, the "capable of repetition, yet evading review" doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

*Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 349 (1975).

ii.   The "Voluntary Cessation" Exception.

25.   If a defendant voluntarily terminates the allegedly unlawful conduct after the lawsuit has been filed but retains the power to resume the practice at any time, a federal court may deem the case nonmoot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000).

26.   The "heavy burden" of persuading the court that a case has been mooted by the defendant's voluntary actions lies with the party asserting mootness, and the standard for such a determination is a "stringent" one: "if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior [can] not reasonably be expected to recur." *Id., citing United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968).

27.   This exception is supported by the Supreme Court because, in addition to ensuring that the defendant is not "free to return to his old ways," there is "a public interest in having the legality of the practices settled." *United States v. W. T. Grant Co*., 345 U.S. 629, 632 (1953) (citation omitted).

D.   **The JGISD Mask Policy is capable of repetition while evading review.**

28.   The close of the term and Governor's Executive Order regarding TEA guidance have made the period during which litigation may be pursued extraordinarily short, given Plaintiff's efforts to resolve matters without recourse to judicial action.

29.     Unfortunately, there is a reasonable expectation that the same complaining party will be subjected to the same action again for several reasons.

30.     First, the efforts that JGISD may adopt in the future to arrest the spread of COVID-19 are uncertain due to the fact that multiple strains of the virus have emerged or are capable of emerging. While many experts have questioned the efficacy of masks on students in public schools, office holders and those advising them have been particularly critical of any suggestion that mask use is a critical tool in fighting COVID-19 in part because variants may spring up at any time and warrant the resumption of child masking requirements.[11]

31.     Second, due to the secrecy employed in the adoption of the JGISD Mask Policy, its basis remains unknown. There is no legal barrier to its readoption at JGISD's discretion for a flu outbreak or other non-COVID condition; therefore the past TOMA violations may occur again. Even now, Defendant's Answer does not deny the assertions that common parents were not allowed to know who developed the Mask Policy:

> 18.     Defendants admit that not policy based on the JGISD 2020-2021 Reopening Plan was submitted for parents to sign. Defendants assert that JGISD was under no obligation to create a separate "policy" for parents to sign related the reopening plan.

*Defendants' Original Answer, Page 4*

---

[11] Bollinger, Robbert and Stuart Ray, New Variants of Coronavirus: What You Should Know, Johns Hopkins Medicine, February 22, 2021, https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/a-new-strain-of-coronavirus-what-you-should-know

32.    Also noteworthy in Defendants' Answer is the absence of any assertion that JGISD gave parents an opportunity to present their thoughts on the matter or suggest that the policy was wrong. To the contrary, Defendant's Answer appears to take the position that secret meetings are perfectly acceptable and the Texas Open Meetings Act can be ignored whenever the JGISD management can claim that a law requires action by an ISD while dishing out carte blanch authority to the superintendent to develop *policy.*

33.    Third, assuming the Mask Policy was based on the TEA guidelines, said guidelines are subject to revision and reinstatement of masking protocols in the event of a new Executive Order in response to new COVID-19 strains or even the common flu.

34.    JGISD's position and actions constitute the archetype of behavior that the Texas Open Meetings Act was designed to prevent and make actionable by any interested party. Plaintiff need not show special damages – any interested party can seek to enforce the Texas Open Meetings Act.

35.    Because JGISD claims that it has done nothing wrong while employing secret meetings to create an apparent policy that claims to be immune from the Texas Open Meetings Act while empowering principals to send some children home and to deny them a quality public education based on ideology.

**E.      JGISD Mask Policy was Voluntarily Amended.**

36.      JGISD made its Mask Policy voluntary rather than compulsory nine days after Plaintiff filed suit.

37.      Although the Governor's executive order directed TEA to rescind its policy requiring mask wearing, there no reason why JGISD cannot again adopt a compulsory Mask Policy by means of its secret committee for the next reason of its own choosing – there is a flu season every year and Dr. Fauci has stated that this nation may need to make face masks a permanent fixture in American life:

> "So it is conceivable that as we go on, a year or two or more from now, that during certain seasonal periods when you have respiratory-borne viruses like the flu, people might actually elect to wear masks to diminish the likelihood that you'll spread these respiratory-borne diseases," Fauci said.

*https://deadline.com/2021/05/masks-seasonal-dr-anthony-fauci-meet-the-press-1234752545/*

38.      Indeed, JGISD has made no documented effort to clarify the nature of, nor provide minutes for, the meeting of its secret committee that adopted the compulsory Mask Policy.

39.      Both reinstitution of the Mask Policy and further legislation by Star Chamber are within the discretionary power of the school district.

40.      The case law cited above makes clear that the burden lies squarely on Defendants to show that voluntary cessation by JGISD is of a nature such that it

should not count as an exception to mootness. Defendants have, so far, made no pleading to that effect.

### III.    OBJECTION TO DEFENDANT'S SUPPORTING DECLARATION

41.    Plaintiffs object to the hearsay within the Declaration of Lyle Lackey (ECF No. 10-3) offered by Defendant. For example, Lackey states that "Superintendent Overbo asked for volunteers," "The committee was comprised of JGISD leadership, teachers, and other administrators who expressed interest in being involved…," "the committee met monthly and sought guidance."

### IV.    ADDITIONAL INPUT IS WARRANTED

42.    Plaintiffs are preparing a First Amended Complaint in response to Defendants' Rule 12 motion to dismiss that will further address jurisdiction. That coming amendment will dismiss claims against the individual defendants, Tubb and Lackey. Plaintiffs suggest that the Court refrain from ruling against Plaintiffs on this issue until that amended complaint and response to Defendants' Motion to Dismiss is filed.

### V.    CONCLUSION

43.    Though Plaintiff requested a restraining order when this case was filed on May 6, the lack of action by the state court, removal of the case to this Court on May 11, and this Court's determination that no action will be taken before June 10, 2021, Plaintiff accepts the reality that the regular school year is over and the

opportunity to limit the damage done to the Plaintiff is complete for this school year. While other students may be involved in summer school and still be subject to the whims of secret committees and mask shaming by faculty, Plaintiff will not be among those suffering from such antics.

44.     Even if the Mask Policy remains rescinded for the foreseeable future, the violation of the Texas Open Meeting Act, denial of C.L.'s constitutional right to a due process and equal protection, remain questions that are both unresolved and capable of repetition.

45.     The public has an interest in having these questions settled, given that state power is at its zenith during exceptional circumstances like pandemics. Courts properly defer to the executive branch when extreme circumstances warrant emergency action. But courts should not hesitate to scrutinize executive actions like those taken by JGISD for conformity to law and redress rights violations where appropriate.

46.     Judicial scrutiny is especially necessary where there is evidence that drastic action can be taken again.

## VI.    PRAYER

As JGISD currently asserts that it was within its authority to act as it did, the allegations and illegal meetings described in Plaintiffs Original Complaint remain valid; Defendant JGISD claims a power to develop policy by covert committee.

Thus, both the "Repeatable and Evading Review" and "Voluntary Cessation" exception to the mootness doctrine apply, and the Court should not dismiss Plaintiff's claims as moot.

Respectfully submitted,
By: /s/ Warren V. Norred
Warren V. Norred, Texas Bar No. 24045094
wnorred@norredlaw.com
515 E. Border; Arlington, Texas 76010
P: 817-704-3984; F: 817-524-6686
Attorney for Plaintiff

Pursuant to 28 U.S. Code § 1746, I, Warren V. Norred, a citizen of Arlington, Texas, hereby declare under penalty of perjury that the above statements concerning the authenticity of documents are within my personal knowledge and is true and correct.

By: /s/ Warren V. Norred
Warren V. Norred

CERTIFICATE OF SERVICE – I certify that on June 10, 2021, I filed this brief through the Court's efiling system to all counsel of record.

By: /s/ Warren V. Norred

# APPENDIX

# Table of Contents

Exh. 1 - June 18, 2020 School Board Minutes                                 3

Exh. 2 - Long Declaration                                                   5

    Exh. 2A - JGSID Reopening Plan                                   10

    Exh. 2B - Recording                                             20

Exh. 3 - Proposed TRO                                                      20

Exh. 4 - EO GA-34                                                          23

Exh. 5 - EO GA-29                                                          29

Exh. 6 - JGISD April Minutes                                               35

Exh. 7 - School Photos                                                     39

# EXHIBIT 1

Jayton-Girard Independent School District - June 18, 2020 – School Board
Meeting Minutes

The board of Trustees of the Jayton-Girard Independent School District met in regular session on June 18, 2020, with the following members present: to wit:

Amanda McGee-President

| | |
|---|---|
| Kathy Owen | Connie Martinez |
| B.J. Baldridge | L'Rae Lee |

**School Officials Present**: Trig Overbo-Superintendent, Lyle Lackey-Principal, Laci Scogin-Business Manager

**Visitors Present and their comments:**

And the following members absent: Cole Carpenter and Cody Stanaland

Constituting a quorum and among other proceedings had by said Board of Trustees, were the following:

Meeting called to order by President Amanda McGee at 7:02 pm.

Principal's report included scheduling, curriculum, summer training, Chromebook vs iPads, summer workouts, and Scholastic Network.

Superintendent's report included library relocation and surplus books, school housing repairs, school calendar, begin COVID-19 protocol talks, front entrance, day care/gym, paving, tennis courts, and school housing.

Minutes from the May 14, 2020 Regular Meeting and the June 1, 2020 Called Meeting were presented. Motion made by Kathy Owen, seconded by Connie Martinez to approve the minutes. All in favor.

The bills and financial report were presented. Motion made by L'Rae Lee, seconded by B.J. Baldridge to approve the bills as presented. All in favor.

Motion made by B.J. Baldridge, seconded by Connie Martinez to call for vehicle fuel and propane bids and to call for vendors for Personal Property valued between $10,000 and $25,000 for the 2020-2021 fiscal year. All in favor.

Motion made by Connie Martinez, seconded by B.J. Baldridge to approve the annual review of Investment Policies and Procedures as presented. All in favor.

Motion made by Kathy Owen, seconded by Connie Martinez to name Laci Scogin as the Investment Officer for Jayton-Girard ISD. All in favor.

Motion made by B.J. Baldridge, seconded by Kathy Owen to approve the request for County Permanent School Funds in the amount of $348,063.22 for capital improvements. All in favor.

No action taken on Depository Contract Extension with Bank of Texas. Current contract in effect until August 31, 2021.

Motion made by L'Rae Lee, seconded by B.J. Baldridge to approve missed school day waiver as presented. All in favor.

Motion made by Kathy Owen, seconded by B.J. Baldridge to accept bid from White River Youth Camp in the amount of $2,200 for the house located at 601 Jefferson pending proof of bond and insurance. All in favor.

No action taken on Fund Balance Designation.

Next board meeting: July 21, 2020 at 7:00pm

Motion made by Connie Martinez, seconded by B.J. Baldridge to adjourn the meeting.  All in favor.

Meeting adjourned at 8:08 pm.


_____                    _____
President                                                      Secretary

# EXHIBIT 2

Declaration of Clint Long with Attached Exhibits

**EXHIBIT 2**

## Declaration (TEX. CIV. PRAC. & REM. CODE § 132.001)

"My name is Clint Long, my date of birth is August 03rd, 1978 and my contact address is Box 243 Jayton, Tx. 79528. I declare under penalty of perjury that the following statements are true and correct."

1. I am a resident of Kent County Texas.

2. My son Carson Long attends school in the Jayton-Girard Independent School District.

3. On July 17th, the school district sent a text message to all parents, with children enrolled in Jayton-Girard ISD.

4. The text message included an attachment labeled, "JGISD 2020-2021 Reopening Plan. ("Plan" attached as Exhibit 2A).

5. Neither the process by which the Plan was created, nor the parties responsible for the creation of the plan were specified anywhere in the document.

6. I could not find the Plan anywhere on the Jayton-Girard ISD website, and I believe it is not published anywhere.

7. No forms were sent to parents to sign regarding the Plan.

8. Jayton-Girard ISD reopened school on August 13, 2020.

9. The Plan included detailed provisions regarding face coverings:

- Faculty, staff, and students are required to wear a face covering when entering and exiting the building, and during passing periods.

  - PK-2nd grade will be required to wear a face covering when entering or exiting the building. Once in the classroom a face shield provided by the district will be worn during instruction time. Neck gaiters provided by the district will be worn during recess and PE time when students are in close contact.

  - 3rd-12th grade will be allowed to wear their own choice of face covering when entering or exiting the building, in the classroom, and during the passing periods. Neck gaiters provided by the district will be worn during recess, PE time, and athletics when students are in close contact. Students may be asked by their teachers at times to wear a face shield instead of a mask for educational purposes.

Declaration of Clint Long                                                    Page 1

**APPX. Pg. 7 of 67**

**EXHIBIT 2**

10. The Plan also includes a number of exemptions to the general mask mandate, including:

- We don't intend for the students to wear a face covering for the entire duration of a school day and faculty and staff will be looking for every opportunity to reduce the use of face coverings when other mitigating strategies can be met.

  For example:

  - o  Face coverings are **NOT** required to be worn in the classroom when 6ft of social distancing is available. (teacher discretion)

  - o  Face coverings are **NOT** required when students are outside and are able to maintain 6ft of social distancing. (teacher & coach discretion)

  - o  Face coverings are **NOT** required when eating breakfast & lunch.

11.  The Plan includes no exemptions based on disability, religion, or conscience.

12. The Plan does specify that the mask policies are subject to revision based on CDC, state, and local recommendations:

*Our first priority is the safety of our students, employees, families, and surrounding community, and we strive to make the most responsible decisions to facilitate a safe environment for all. We would also like to emphasize that because of the fluid nature of this pandemic, CDC, state and local authority recommendations and mandates may be different on the first day of school than they are at the time of distribution of this information. We will adjust accordingly.*

13. I requested a religious exemption from mask wearing from the school because I believe the basis for wearing masks is not true. My request was denied.

14. In March of 2021, the names of the committee members who authored the Plan were released to some parents, but were not published on Jayton-Girard ISD website.

15. However, the process by which the committee drafted the Plan remains unknown. Membership criteria regarding on the committee remains secret.

16. Carson has been denied access to Jayton-Girard ISD, during the Spring 2021 term due to my objection to mask wearing on religious and conscience grounds.

17. The ISD, through its agents, has cited the mask policy as the grounds for Carson's exclusion from school.

Declaration of Clint Long                                                                                      Page 2

18. On March 11th, 2021, I approached to door to the school with my son but was stopped outside by a school official Lyle Lackey ("Recording" attached as Exhibit 2B).

19. We exchanged greetings, but I observed him blocking the door, so I asked "we're not coming in?"

20. I was then told that Carson had to wear a mask to enter.

21. When I asked him if he was going to deny us access without a mask, he said, "Yes."

22. When I asked about the religious exemption that we were claiming, he replied that administrative codes that referred to immunization exemptions based on religion did not apply to masks.

23. When I asked, "Either way, you're not going to accept religious exemptions?" he replied, that exemptions only apply to immunization.

24. Ultimately, my son was barred from entering school because he refused to comply with a mask policy based on a secretly created irrational school policy that has no basis and to which he had a sincerely held religious belief.

Executed in Kent County, Texas on April 16,, 2021

Clint Long

Declaration of Clint Long                                                                      Page 3

# EXHIBIT 2A

JGISD Reopening Plan

# JGISD 2020-2021 REOPENING PLAN



***Our objective is to return to the social interaction of a connected learning environment while implementing reasonable measures for student and staff safety.***

*At JGISD, we are committed to a safe and complete return to school on August 13, 2020, and we are preparing to provide full in-person instruction. If you are not comfortable sending your child into the school building, then remote learning for PK-12th grades will be provided in compliance with TEA guidelines. We have been monitoring the spread of Covid-19 in Kent County and have created a plan that is reasonable and appropriate to do our part to stay healthy and provide a safe learning environment for all of our staff and students. The plans set forth are subject to change depending on future developments, but the following will allow us to return to the school environment we so deeply love and value.*

# *Content Covered*

*01-- Daily Procedures*

*02-- Face Coverings*

*03-- Remote Learning Plan*

*04-- Cleaning Protocols*

*05--Distancing Guidelines & Supporting a Healthy Campus*

*06--Partial Closures & Plan Review*



# *01--Daily Procedures*

*In order for JGISD to return to social interactions of a connected learning environment, we will be implementing reasonable measures to help stop the spread of Covid-19. These procedures include screening for symptoms, reducing points of congestion in the building, enforcing regular hygiene, and implementing other prevention and mitigation tactics:*

- ***District Transportation:***

  - Will be provided for students that live outside the city limits.

  - Upon entering the vehicle the student will have his/her face covered, have his/her temperature taken, sanitize hands, and sit as socially-distanced as space allows inside the vehicle.

  - Parents must wait for the student to be cleared by the driver and seated inside the vehicle before they may leave the drop-off site.

  - Once arrived at school, students will enter the building by the playground door and go to their designated area or classroom for breakfast.

- ***Student drop off times in the mornings by parents:***

  - Students are to arrive on campus between 7:35am and 8:00am.

  - PK & K can enter the backdoor of their teachers' classrooms by the playground.

  - 1st-6th graders can enter the elementary door in front of the building or the door by the cafeteria.

  - 7th-12th graders can enter the building through the band hall doors.

  - Covid-19 screening procedures of all students will be done by staff members as they enter the building (temperature check, hand sanitation, and checking for a face covering),

  - Parents must wait for the student to be cleared and inside the building before they may leave the drop-off site.

  - Students will go directly to their designated classroom or area and will be given the opportunity to eat breakfast until 8:00am.

- ***Lunch Time:***

  - To allow for social interaction, students will eat together but maintain a degree of social distancing.



- Lunch tables will be spread out in the cafeteria and gym foyer to provide room for social distancing and lunch times will be staggered to provide for more time to serve meals and for proper cleaning of tables.

- ***PE, Recess, and Break Times***:

  - Students will enjoy daily PE, recess, and break times that have been staggered to allow for appropriate socialization opportunities while reducing congestion.

- ***Pick up Times:***

  - Bus students will exit through the playground doors.

  - PK-2nd will exit the elementary doors & 3rd-8th will exit through the gym lobby doors.

  - 9th-12th will leave through the band hall doors (athletes will need to go through the playground to the locker rooms for after school practice).

  - Parents are asked to stay in or near their vehicle upon picking up their students and practice social distancing.

- ***Taking Temperature***

  - Students will have their temperature taken prior to entering school transportation or the building (whichever comes first) and prior to lunch for elementary and junior high students, and prior to athletics for high school students.

  - If a student has a temperature of 100.4 they will not be allowed on the bus or let in the building and if a student has 100.4 temperature while at school, they will be isolated and monitored by staff in designated areas until parents can come pick up their student.

- ***Visitors to campus:***

  - Visitors coming on campus through the main office doors and into the halls will be required to complete a Covid-19 screening form and have their temperature checked, be asked to sanitize hands and wear a face covering.

  - Visitors are not allowed to come eat meals with students, and if a student has forgotten their lunch at home that morning, parents may bring that to the main office for delivery to the student.

  - 7th-12th grade students who participate in open campus lunch are not allowed to bring outside food onto the campus.



# *02--Face Coverings*

*Our first priority is the safety of our students, employees, families, and surrounding community, and we strive to make the most responsible decisions to facilitate a safe environment for all. We would also like to emphasize that because of the fluid nature of this pandemic, CDC, state and local authority recommendations and mandates may be different on the first day of school than they are at the time of distribution of this information. We will adjust accordingly.*

*We believe it is wise to have every mitigation resource available, including face coverings, to use when appropriate or required. Face coverings will be defined as cloth masks, disposable masks, face shields, neck gaiters, bandanas, and handkerchiefs, that are used to cover both the nose and mouth.*

- Faculty, staff, and students are required to wear a face covering when entering and exiting the building, and during passing periods.

    o PK-2nd grade will be required to wear a face covering when entering or exiting the building.  Once in the classroom a face shield provided by the district will be worn during instruction time. Neck gaiters provided by the district will be worn during recess and PE time when students are in close contact.

    o 3rd-12th grade will be allowed to wear their own choice of face covering when entering or exiting the building, in the classroom, and during the passing periods. Neck gaiters provided by the district will be worn during recess, PE time, and athletics when students are in close contact. Students may be asked by their teachers at times to wear a face shield instead of a mask for educational purposes.

- We don't intend for the students to wear a face covering for the entire duration of a school day and faculty and staff will be looking for every opportunity to reduce the use of face coverings when other mitigating strategies can be met.

    For example:

    o Face coverings are **NOT** required to be worn in the classroom when 6ft of social distancing is available. (teacher discretion)

    o Face coverings are **NOT** required when students are outside and are able to maintain 6ft of social distancing. (teacher & coach discretion)

    o Face coverings are **NOT** required when eating breakfast & lunch.



# *03--Remote Learning Plan*

*We intend to operate in a 100% on site model for the entirety of the 2020-2021 school year. This plan is subject to change depending on state and federal mandates, but we are prepared to educate our students without interruption in any circumstance. In preparation for increased absences or family choice to not have your student in the building, we are prepared to deliver instruction to students remotely using technology that will allow students to participate and not fall behind but still be in accordance with TEA attendance guidelines.*

- Students who voluntarily participate in an all-remote instructional method, whether synchronous or asynchronous, shall not be permitted to participate in any extracurricular activity, practice, or performance for the grading period in which the student is receiving all-remote instruction.
- Students & parents will have a three week grace period from the first day of school to change from remote to in person learning.  After the three-week grace period, students will only be allowed to change only at the beginning of a new grading period.

*Here are the different remote learning options offered & training will be provided by the district for families on how to use the technology devices and learning platforms at home for remote learning. Students choosing the remote learning option must inform the district by Thursday, August 6th.*

- Synchronous (3rd-12th): defined as two way, real-time/live, virtual instruction between teachers and students when students are not on campus. In this method, the required amount of instructional time is scheduled each day and attendance is taken by each teacher daily.

    o 3rd-12th grade students will be required through an internet connection to login on their chromebooks to Google classroom and use Google meets to participate in each class (at the same time the class is being facilitated on campus).

    o Assignments and  assessments will be posted on Google classroom and students will be required to have a school-issued email address.

- Asynchronous (PK-2nd): defined as instruction that does not require having the instructor and student engaged at the same time. In this method, students learn from instruction that is not being delivered in-person or in real time.

    o PK-2nd teachers will use a combination of online learning platforms, pre-recorded videos and packets to provide instruction, assignments, and assessments.



# *04--Cleaning Protocols*

*To reduce the transmission of Covid-19, JGISD has taken the following sanitation measures:*

- Protocols for periodic cleaning and disinfecting of shared surfaces and objects will be implemented throughout the day, both inside and outside the classroom.

- The use of water stations will be minimized. Students are asked to bring a water bottle each day labeled with the student's name.

- At the end of the day, students that wear district-issued face shields will return them to their homeroom teacher or 1st period teacher before they exit the building so they may be cleaned and sanitized by the staff.

- Students will be allowed to enjoy the use of the playground and PE equipment and cleaning protocols will be in place throughout the day to disinfect all the equipment used.



## *05-- Distancing Guidelines & Supporting A Healthy Campus*

*JGISD will provide the same in-person learning environment students and families have always enjoyed, with the following common-sense protocols in place:*

- Daily procedures have been adjusted to avoid congestion in common areas at the beginning and end of the day, as well as at lunch and recess.
- Desks and student seating will be spread out as much is reasonably possible as each classroom space allows. Teachers and staff will ensure students' maintain distance and reduce the shared use of materials.
- Lunch times will be staggered to assist in lessening congestion and social distance will be maintained between students during meal times while still allowing them the opportunity to sit together and have social interactions. Protocols will be implemented to reduce/prevent the handling of cups, utensils, and other supplies by multiple people.

*Keeping our campus open for learning will require cooperation and support from all of our families.  We know the Jaybird family community is up to the task and we are counting on you to do your part to support this process. Keeping your children at home when they are not feeling well is essential.*

- Any and all students, faculty, or staff should stay home from school or work if they 1) have tested positive for Covid-19; 2) had close contact with anyone confirmed to have Covid-19 in the prior 14 days; 3) are experiencing symptoms including but not limited to, cough, shortness of breath or difficulty breathing, feeling feverish or having a temperature of 100.4 degrees or more, chills, shaking or shivering, headache, loss of smell or taste, sore throat, significant muscle pain or diarrhea.
- JGISD will follow the most updated TEA, CDC, and local health authority guidelines to make decisions on a students' removal from and return to campus after experiencing multiple Covid-19 symptoms, and or testing positive for Covid-19.



# *06-- Partial Closures & Plan Review*

*In the event of an outbreak of COVID-19 cases at JGISD, we are prepared to follow CDC and local health officials guidance for a short term (2-5 day) closure of the school facility. If this occurs, we will continue to deliver content using the remote learning model we developed this year and will return to the classroom promptly after assessing the situation and taking appropriate measures to halt the spread.*

- We have an incredible staff who are ready to make this year a truly excellent experience for our entire community. We look forward to partnering with you and we will continue to evaluate our plan and reassess, as necessary, over the course of the next few weeks. We are praying for your family and we cannot wait to be together again on August 13th.

- As guidelines referring to Covid-19 and circumstances specific to our community are ever changing, we have selected three dates as part of our campus plan review. On each of these dates, we will evaluate and adjust our plan according to circumstances of our school, community, and state of Texas, as well as the guidelines in place at those times. We will use both local and regional authorities, and health officials in making these decisions. We will continue to add additional dates as necessary.

- Campus plan review dates:

  o   September 4

  o   September 25

  o   October 16

- JGISD open house will be done virtually at a date and time to be determined.



# EXHIBIT 2B

Recording – Due to size constraints, the video is available from Petitioner's counsel upon request

# EXHIBIT 3
Proposed Temporary Restraining Order

CAUSE NO. _____

| | | |
|---|---|---|
| **CLINT LONG, INDIVIDUALLY AND** | § | **IN THE DISTRICT COURT** |
| **N/F OF C.L.** | § | |
| ***Plaintiffs,*** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JOHNNY TUB, SUPERINTENDENT OF** | § | **____ JUDICIAL DISTRICT** |
| **JAYTON-GIRARD INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| **JAYTON-GIRARD INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| ***Defendents.*** | § | **KENT COUNTY, TEXAS** |

## TEMPORARY RESTRAINING ORDER

This matter was heard upon Plaintiffs Clint Long and C.L.'s application for temporary restraining order, *ex parte*. Based on *Plaintiffs' Original Petition* and evidence attached, the Court GRANTS the application as follows:

The Court FINDS that the current Jayton-Girard Independent School District ("JGISD") policy on face masks irrationally prevents students from attending in-person learning unless they wear a mask, and such policy was created by a secret committee during meetings that were not noticed or available to the public, an apparent violation of the Texas Open Meetings Act, which provides for injunctive relief to stop such violations and makes the mask policy voidable.

The Court FINDS that, unless enjoined, Plaintiffs face irreparable harm, including significant and irreparable damage to their constitutional rights, health and education, as C.L. is being denied the in-person education that other individuals are receiving, a right protected by the state and federal constitutions and recognized by the judicial system in this country.

Additionally, the Court FINDS immediate injunctive intervention is appropriate to prevent further harm and preserve the status quo before the Court can hear and consider the

Plaintiff's application for a temporary injunction. The loss of constitutional freedoms for even

minimal periods of time, unquestionably constitutes irreparable injury.

NOW, THEREFORE, good cause appearing, the Court GRANTS the application, and

ORDERS Johnny Tub and Jayton-Girard Independent School District ("Defendants") and all

their representatives and agents to cease and desist enforcement actions of the JGISD 2020-2021

Reopening Plan's masking provisions and any other enforced masking policy against the

Plaintiffs for fourteen (14) days pending a full evidentiary hearing on Plaintiff's application for

temporary injunction, as follows:

> Defendants shall not deny Plaintiffs' access to in-person learning at any educational institution in JGISD based in any way upon or conditions alleged to serve as a basis for the JGISD 2020-2021 Reopening Plan.

> This temporary restraining order is granted on the condition that an undertaking, executed

by the plaintiff and an appropriate surety in the sum of $100.00 be filed to make good such

damages as may be occasioned by the defendants, not to exceed said sums as may be suffered by

a defendant who is found to be wrongfully restrained.

Filing of the bond herewith required is noted by this court as having occurred by the time

of issuance of this order on the same day.

The Plaintiff's motion on the application for a preliminary injunction is hereby set to be

heard before the Court at _____, on _____ at _____ o'clock.  This temporary

restraining order shall continue in force for fourteen (14) days from the date it takes effect.

IT IS HEREBY ORDERED that the trial on the action on the merits will advanced and

consolidated with the hearing on the application for preliminary injunction.


Dated: _____          _____
                                    Judge Presiding

# EXHIBIT 4

Executive Order GA-34

**EXHIBIT 4**



GOVERNOR  GREG  ABBOTT

March 2, 2021

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___1:15 PM___O'CLOCK

MAR 2 2021

Secretary of State

The Honorable Ruth R. Hughs
Secretary of State
State Capitol Room 1E.8
Austin, Texas  78701

Dear Secretary Hughs:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

Executive Order No. GA-34 relating to the opening of Texas in response to the COVID-19 disaster.

The original executive order is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

POST OFFICE BOX 12428 AUSTIN, TEXAS 78711 512-463-2000 (VOICE) DIAL 7-1-1 FOR RELAY SERVICES

**EXHIBIT 4**

# 𝕷𝖝𝖊𝖈𝖚𝖙𝖎𝖛𝖊 𝕺𝖗𝖉𝖊𝖗

### BY THE
### GOVERNOR OF THE STATE OF TEXAS

**Executive Department
Austin, Texas
March 2, 2021**

### EXECUTIVE ORDER
### GA 34

*Relating to the opening of Texas in response to the COVID-19 disaster.*

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, in each subsequent month effective through today, I have renewed the disaster declaration for all Texas counties; and

WHEREAS, I have issued executive orders and suspensions of Texas laws in response to COVID-19, aimed at protecting the health and safety of Texans and ensuring an effective response to this disaster; and

WHEREAS, I issued Executive Order GA-08 on March 19, 2020, mandating social-distancing restrictions in accordance with guidelines promulgated by President Donald J. Trump and the Centers for Disease Control and Prevention (CDC); and

WHEREAS, I subsequently issued a series of superseding executive orders aiming to achieve the least restrictive means of combatting the evolving threat to public health by adjusting social-distancing restrictions while implementing a safe, strategic plan to reopen Texas; and

WHEREAS, under Executive Order GA-32, in effect since October 14, 2020, most establishments have been able to operate up to at least 75 percent of total occupancy, except in some areas with high hospitalizations as defined in that order, where most establishments have been able to operate up to at least 50 percent of total occupancy; and

WHEREAS, I also issued Executive Order GA-29, regarding the use of face coverings to control the spread of COVID-19, and a series of executive orders, most recently GA-31, limiting certain medical surgeries and procedures; and

WHEREAS, COVID-19 hospitalizations and the rate of new COVID-19 cases have steadily declined due to the millions of Texans who have voluntarily been vaccinated, many more who are otherwise immune, improved medical treatments for COVID-19 patients, abundant supplies of testing and personal protective equipment, and Texans' adherence to safe practices like social distancing, hand sanitizing, and use of face coverings; and

WHEREAS, in the Texas Disaster Act of 1975, the legislature charged the governor with the responsibility "for meeting … the dangers to the state and people presented by

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___1:15ᵖᵐ___ O'CLOCK

MAR 0 2 2021

**EXHIBIT 4**

*Governor Greg Abbott*
March 2, 2021

*Executive Order GA-34*
Page 2

disasters" under Section 418.011 of the Texas Government Code, and expressly granted the governor broad authority to fulfill that responsibility; and

WHEREAS, under Section 418.012, the "governor may issue executive orders ... hav[ing] the force and effect of law;"

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, and in accordance with guidance from medical advisors, do hereby order the following on a statewide basis effective at 12:01 a.m. on March 10, 2021:

1. In all counties not in an area with high hospitalizations as defined below:
   a. there are no COVID-19-related operating limits for any business or other establishment; and
   b. individuals are strongly encouraged to wear face coverings over the nose and mouth wherever it is not feasible to maintain six feet of social distancing from another person not in the same household, but no person may be required by any jurisdiction to wear or to mandate the wearing of a face covering.

   "Area with high hospitalizations" means any Trauma Service Area that has had seven consecutive days in which the number of COVID-19 hospitalized patients as a percentage of total hospital capacity exceeds 15 percent, until such time as the Trauma Service Area has seven consecutive days in which the number of COVID-19 hospitalized patients as a percentage of total hospital capacity is 15 percent or less. A current list of areas with high hospitalizations will be maintained at www.dshs.texas.gov/ga3031.

2. In any county located in an area with high hospitalizations as defined above:
   a. there are no state-imposed COVID-19-related operating limits for any business or other establishment;
   b. there is no state-imposed requirement to wear a face covering; and
   c. the county judge may use COVID-19-related mitigation strategies; *provided, however, that*:
      i. business and other establishments may not be required to operate at less than 50 percent of total occupancy, with no operating limits allowed to be imposed for religious services (including those conducted in churches, congregations, and houses of worship), public and private schools and institutions of higher education, and child-care services;
      ii. no jurisdiction may impose confinement in jail as a penalty for violating any order issued in response to COVID-19; and
      iii. no jurisdiction may impose a penalty of any kind for failure to wear a face covering or failure to mandate that customers or employees wear face coverings, except that a legally authorized official may act to enforce trespassing laws and remove violators at the request of a business establishment or other property owner.

3. In providing or obtaining services, every person (including individuals, businesses, and other legal entities) is strongly encouraged to use good-faith efforts and available resources to follow the Texas Department of State Health Services (DSHS) health recommendations, found at www.dshs.texas.gov/coronavirus.

4. Nothing in this executive order precludes businesses or other establishments from requiring employees or customers to follow additional hygiene measures, including the wearing of a face covering.

5. Nursing homes, state supported living centers, assisted living facilities, and long-

**EXHIBIT 4**

*Governor Greg Abbott*
March 2, 2021

*Executive Order GA-34*
Page 3

term care facilities should follow guidance from the Texas Health and Human Services Commission (HHSC) regarding visitations, and should follow infection control policies and practices set forth by HHSC, including minimizing the movement of staff between facilities whenever possible.

6. Public schools may operate as provided by, and under the minimum standard health protocols found in, guidance issued by the Texas Education Agency. Private schools and institutions of higher education are encouraged to establish similar standards.

7. County and municipal jails should follow guidance from the Texas Commission on Jail Standards regarding visitations.

8. Executive Orders GA-17, GA-25, GA-29, and GA-31 are rescinded in their entirety.

9. This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts services allowed by this executive order or allows gatherings restricted by this executive order. Pursuant to Section 418.016(a) of the Texas Government Code, I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions in response to the COVID-19 disaster that are inconsistent with this executive order, provided that local officials may enforce this executive order as well as local restrictions that are consistent with this executive order.

10. All existing state executive orders relating to COVID-19 are amended to eliminate confinement in jail as an available penalty for violating the executive orders. To the extent any order issued by local officials in response to the COVID-19 disaster would allow confinement in jail as an available penalty for violating a COVID-19-related order, that order allowing confinement in jail is superseded, and I hereby suspend all relevant laws to the extent necessary to ensure that local officials do not confine people in jail for violating any executive order or local order issued in response to the COVID-19 disaster.

This executive order supersedes Executive Orders GA-17, GA-25, GA-29, GA-31, and GA-32, but does not supersede Executive Orders GA-10 or GA-13. This executive order shall remain in effect and in full force unless it is modified, amended, rescinded, or superseded by the governor. This executive order may also be amended by proclamation of the governor.

Given under my hand this the 2nd day of March, 2021.

GREG ABBOTT
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
1:15pm O'CLOCK

MAR 0 2 2021

**APPX. Pg. 28 of 67**

# EXHIBIT 5

*Governor Greg Abbott*
March 2, 2021

*Executive Order GA-34*
Page 4

ATTESTED BY:

RUTH R. HUGHS
Secretary of State

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
1:15PM   O'CLOCK

MAR 0 2 2021

# EXHIBIT 5

Executive Order GA-29

EXHIBIT 5



GOVERNOR GREG ABBOTT

July 2, 2020

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___2:30 PM___ O'CLOCK

_Secretary of State_

The Honorable Ruth R. Hughs
Secretary of State
State Capitol Room 1E.8
Austin, Texas 78701

Dear Secretary Hughs:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

> Executive Order No. GA-29 relating to the use of face coverings during the
> COVID-19 disaster.

The original executive order is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

POST OFFICE BOX 12428 AUSTIN, TEXAS 78711 512-463-2000 (VOICE) DIAL 7-1-1 FOR RELAY SERVICES

EXHIBIT 5

# 𝕰𝖝𝖊𝖈𝖚𝖙𝖎𝖛𝖊 𝕺𝖗𝖉𝖊𝖗

**BY THE
GOVERNOR OF THE STATE OF TEXAS**

**Executive Department
Austin, Texas
July 2, 2020**

**EXECUTIVE ORDER
GA 29**

*Relating to the use of face coverings during the COVID-19 disaster.*

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, in each subsequent month effective through today, I have renewed the disaster declaration for all Texas counties; and

WHEREAS, the Commissioner of the Texas Department of State Health Services (DSHS), Dr. John Hellerstedt, has determined that COVID-19 continues to represent a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code; and

WHEREAS, I have issued executive orders and suspensions of Texas laws in response to COVID-19, aimed at using the least restrictive means available to protect the health and safety of Texans and ensure an effective response to this disaster; and

WHEREAS, as Texas reopens in the midst of COVID-19, increased spread is to be expected, and the key to controlling the spread and keeping Texans safe is for all people to consistently follow good hygiene and social-distancing practices; and

WHEREAS, due to recent substantial increases in COVID-19 positive cases, and increases in the COVID-19 positivity rate and hospitalizations resulting from COVID-19, further measures are needed to achieve the least restrictive means for reducing the growing spread of COVID-19, and to avoid a need for more extreme measures; and

WHEREAS, I have joined the medical experts in consistently encouraging people to use face coverings, and health authorities have repeatedly emphasized that wearing face coverings is one of the most important and effective tools for reducing the spread of COVID-19; and

WHEREAS, given the current status of COVID-19 in Texas, requiring the use of face coverings is a targeted response that can combat the threat to public health using the least restrictive means, and if people follow this requirement, more extreme measures may be avoided; and

WHEREAS, wearing a face covering is important not only to protect oneself, but also to avoid unknowingly harming fellow Texans, especially given that many people who go into public may have COVID-19 without knowing it because they have no symptoms; and

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2:30pm   O'CLOCK

JUL 0 2 2020

**EXHIBIT 5**

WHEREAS, the "governor is responsible for meeting … the dangers to the state and people presented by disasters" under Section 418.011 of the Texas Government Code, and the legislature has given the governor broad authority to fulfill that responsibility; and

WHEREAS, failure to comply with any executive order issued during the COVID-19 disaster is an offense punishable under Section 418.173 by fine;

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective at 12:01 p.m. on July 3, 2020:

Every person in Texas shall wear a face covering over the nose and mouth when inside a commercial entity or other building or space open to the public, or when in an outdoor public space, wherever it is not feasible to maintain six feet of social distancing from another person not in the same household; *provided, however, that this face-covering requirement does not apply to the following*:

1.  any person younger than 10 years of age;

2.  any person with a medical condition or disability that prevents wearing a face covering;

3.  any person while the person is consuming food or drink, or is seated at a restaurant to eat or drink;

4.  any person while the person is (a) exercising outdoors or engaging in physical activity outdoors, and (b) maintaining a safe distance from other people not in the same household;

5.  any person while the person is driving alone or with passengers who are part of the same household as the driver;

6.  any person obtaining a service that requires temporary removal of the face covering for security surveillance, screening, or a need for specific access to the face, such as while visiting a bank or while obtaining a personal-care service involving the face, but only to the extent necessary for the temporary removal;

7.  any person while the person is in a swimming pool, lake, or similar body of water;

8.  any person who is voting, assisting a voter, serving as a poll watcher, or actively administering an election, but wearing a face covering is strongly encouraged;

9.  any person who is actively providing or obtaining access to religious worship, but wearing a face covering is strongly encouraged;

10. any person while the person is giving a speech for a broadcast or to an audience; or

11. any person in a county (a) that meets the requisite criteria promulgated by

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2:30pm O'CLOCK

JUL 0 2 2020

**APPX. Pg. 33 of 67**

EXHIBIT 5

*Governor Greg Abbott*
July 2, 2020

*Executive Order GA-29*
Page 3

the Texas Division of Emergency Management (TDEM) regarding minimal cases of COVID-19, and (b) whose county judge has affirmatively opted-out of this face-covering requirement by filing with TDEM the required face-covering attestation form—provided, however, that wearing a face covering is highly recommended, and every county is strongly encouraged to follow these face-covering standards.

Not excepted from this face-covering requirement is any person attending a protest or demonstration involving more than 10 people and who is not practicing safe social distancing of six feet from other people not in the same household.

TDEM shall maintain on its website a list of counties that are not subject to this face-covering requirement pursuant to paragraph number 11. The list can be found at: www.tdem.texas.gov/ga29.

Following a verbal or written warning for a first-time violator of this face-covering requirement, a person's second violation shall be punishable by a fine not to exceed $250. Each subsequent violation shall be punishable by a fine not to exceed $250 per violation.

Local law enforcement and other local officials, as appropriate, can and should enforce this executive order, Executive Order GA-28, and other effective executive orders, as well as local restrictions that are consistent with this executive order and other effective executive orders. But no law enforcement or other official may detain, arrest, or confine in jail any person for a violation of this executive order or for related non-violent, non-felony offenses that are predicated on a violation of this executive order; provided, however, that any official with authority to enforce this executive order may act to enforce trespassing laws and remove violators at the request of a business establishment or other property owner.

This executive order hereby prohibits confinement in jail as a penalty for the violation of any face-covering order by any jurisdiction.

Executive Order GA-28 is hereby amended to delete from paragraph number 15 the phrase: ", but no jurisdiction can impose a civil or criminal penalty for failure to wear a face covering."

The governor may by proclamation amend this executive order or add to the list of people to whom this face-covering requirement does not apply.

This executive order does not supersede Executive Orders GA-10, GA-13, GA-17, GA-19, GA-24, GA-25, GA-27, or GA-28 as amended. This executive order shall remain in effect and in full force until modified, amended, rescinded, or superseded by the governor.

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2:30 PM O'CLOCK

JUL 0 2 2020

**EXHIBIT 5**

*Governor Greg Abbott*
July 2, 2020

*Executive Order GA-29*
Page 4

Given under my hand this the 2nd
day of July, 2020.

GREG ABBOTT
Governor

ATTESTED BY:

RUTH R. HUGHS
Secretary of State

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
___2:30pm___ O'CLOCK

JUL 0 2 2020

**APPX. Pg. 35 of 67**

# EXHIBIT 6

Jayton-Girard Independent School District - April 20, 2021 - Schoolboard Minutes

**EXHIBIT 6**

The board of Trustees of the Jayton-Girard Independent School District met in regular session on April 20, 2021, with the following members present: to wit:

Amanda McGee – President

| | |
|---|---|
| Jeff Arnold | Connie Martinez |
| L'Rae Lee | Cody Stanaland |
| B.J. Baldridge | |

**School Officials Present**: Johnny Tubb- Interim Superintendent, Lyle Lackey-Principal, Laci Scogin-Business Manager, Roger Smetak-Network Admin

**Visitors Present and their comments:** Layne Sheets

And the following members absent: Cole Carpenter

Constituting a quorum and among other proceedings had by said Board of Trustees, were the following:

Meeting called to order by Amanda McGee at 7:02 pm.

Principal's report included student success highlights, Big Event on April 28th, regional and state competitions, testing, rocket launching, and property survey.

Superintendent's report included accident report, 15-passenger van update, school housing update, main sewer line south of school, construction update.

Board President, Amanda McGee, called for closed session for personnel discussion at 7:06 pm.  Returned to regular session at 7:22 pm.

Motion made by Jeff Arnold, seconded by Cody Stanaland to approve contract offering as Superintendent of Schools for the 2021-2022, 2022-2023, 2023-2024 school years for Layne Sheets. All in favor.

Minutes from March 22, 2021 Regular Meeting, March 23, 2021 Called Meeting, and March 29, 2021 Called Meeting were presented.  Motion made by Cody Stanaland, seconded by B.J. Baldridge to approve the minutes as presented.  All in favor.

The bills and financial report were presented.  Motion made by Connie Martinez, seconded by B.J. Baldridge to approve and pay bills as presented.  All in favor.

Motion made by Jeff Arnold, seconded by Cody Stanaland to approve budget amendments as presented.  All in favor.

Motion made by Cody Stanaland, seconded by B.J. Baldridge to request for County Permanent School Funds in the amount of $367,792.31 for capital improvements.  All in favor.

Motion made by Jeff Arnold, seconded by B.J. Baldridge to approve the amendment of the Child Care Center in the amount of $40,000.00.  All in favor.

Preliminary budget projections were presented and discussed for 2021-2022 and 2022-2023 and no action was taken.

Motion made by Connie Martinez, seconded by Jeff Arnold to approve the purchase of the DW 3U Rack NVR (I-70 4MP), (10 Bay) i9 with 120 gig Solid State OS Drive Win 10 Pro with 9:12TB storage drives which is over $10,000. All in favor.

Motion made by B.J. Baldridge, seconded by L'Rae Lee to approve the resolution extending depository contract for

funds.  5-for, Amanda-Abstained.

Information given to board about Summer Leadership Institute. No action taken.

Board President, Amanda McGee, called for closed session for attorney consult at 8:53 pm.  Returned to regular session at 9:31 pm.

Motion made by Cody Stanaland, seconded by Jeff Arnold to approve COVID policies and procedures as recommended by Committee and administration.  All in favor.

Called Meeting to canvas school board election votes on May 6th at 12:00 pm.  Regular board meeting date is set for May 17, 2021 at 8:00 pm.

Motion made by Connie Martinez, seconded by B.J. Baldridge to adjourn the meeting.  All in favor.

Meeting adjourned at 9:40 pm.


_____          _____
President                                Secretary

# EXHIBIT 7

School Photos



**Double J Chronicles**

3m · 🌐

🔥🔥🔥🔥🔥🔥🔥... See More



Justin Boyd Gibson and 4 others

👍 Like          💬 Comment          ↪ Share



































ument 12   Filed 06/10/21



Double J Chronicles
Oct 30, 2020 · 🌐

Mickey Alexander and 1 other

Pg. 58 of 67

   

ument 12   Filed 06/10/21



Double J Chronicles
Oct 30, 2020 · 🌐

 Camsie Valerio and 4 others

 👍 Like     💬 Comment     ↪ Share

ument 12 Filed 06/10/21



Double J Chronicles
Oct 30, 2020 · 🌐

 Dione Valerio and 17 others   3 Comments

👍 Like          💬 Comment          ↪ Share











Double J Chronicles
Feb 26 · 🌐

🔵 Kathy D Smith

👍 Like          💬 Comment          ↗ Share



