UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS - LUBBOCK DIVISION

| | | |
|---|---|---|
| **CLINT LONG, individual and as next friend of C.L.** | § § § | |
| Plaintiff, | § | |
| v. | § § | No. 5:21-CV-111-H |
| **JAYTON-GIRARD INDEPENDENT SCHOOL DISTRICT, ET AL.,** | § § § § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(b)(1) AND 12(B)(6) MOTION TO DISMISS

Pursuant to Defendant's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss [ECF Doc. 9] ("Motion") and to this Court's Order [ECF Doc. 7], Plaintiff files this brief in opposition and in response to the issues raised. Plaintiffs incorporate their First Amended Complaint filed concurrently. The Amended Complaint features two causes of action: 1) Texas Open Meetings Act violation; and 2) a violation of the Fourteenth amendment pursuant to § 1983. Plaintiffs no longer claim any Texas Constitutional violations relating to equal protection, due process, and free public education, nor any claims regarding unwanted medical treatment.

Barring new developments, claims against Tubb and Lackey are dismissed. Any *ultra vires* claims will be appropriately incorporated as further discovery illuminates the TOMA violation details regarding the exact roles of the superintendent and other JGISD officials in creation of the secret committee.

## I.     ARGUMENTS AND AUTHORITIES

**A.     JGISD had discretion in creating its Mask Policy and violated TOMA.**

1.    Plaintiffs refer to their Amended Petition regarding their claim of Defendant's Texas Open Meetings Act ("TOMA") violation.

2.    Sec. 551.002 of the Texas Government Code stipulates that "[e]very regular, special, or called meeting of a governmental body shall be open to the public…".

3.    Furthermore, sec. 551.021(a) requires that "[a] governmental body shall prepare and keep minutes, or make a recording, of each open meeting of the body."

4.    The Texas Supreme Court has held that, "[t]he Open Meetings Act generally provides that an action taken in violation of the Act is 'voidable'…", Town of *Shady Shores v. Swanson*, No. 18-0413, 63 Tex. Sup. Ct. J. 180, 2019 Tex. LEXIS 1213, at *19 (Dec. 13, 2019).

5.    A "meeting" includes any deliberation involving a "quorum" or majority of the members of a governing body at which they act on or discuss any public business or policy over which they have control. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990). When a majority of a public decision-making body is considering a pending issue, there can be no "informal" discussion. *Id.* There is either formal consideration of a matter in compliance with the Open Meetings Act or an illegal meeting. *Id.* The explicit command of the statute is for openness at every stage of the deliberations. *Id.*

6. Defendants judicially admit on page 3 of their Motion that JGISD created their "JGISD 2020-2021 REOPENING PLAN" ("Mask Policy") by a committee yet have provided no evidence of who in JGISD made the decision to form said committee, or of who selected the committee's members. Defendants have also failed to provide evidence that notice of the committee's formation was ever published as required by TOMA. Meetings of this committee were not open to the public in violation of TOMA. Parents were only notified via text message after the Mask Policy was created.

> 1. **The District develops and implements its Reopening Plan.**
>
> JGISD was obligated to follow the comprehensive TEA guidance and executive order in place at the time in developing a plan to reopen schools. According to the TEA guidebook, the District should consult with JGISD leadership and local health officials to develop its plan.[6] The District formed a committee that met frequently to discuss the implementation of the District's reopening plan, which included the mask requirement.[7] The committee was comprised of District leadership, teachers, and other administrators who expressed interest in being involved with the reopening plan.[8] No elected school board member served on the committee. The committee repeatedly sought guidance and coordinated with a local nurse practitioner who regularly treated students and a local health official in Arlington, Texas to develop and maintain JGISD's plan.[9]

*Page 3, Defendant's Brief In Support of Motion to Dismiss [Doc. 9][1]*

7. The Mask Policy was a district-wide policy. Defendants seem to believe they can fool the Court, Texas parents, and Plaintiffs by trying to disguise their

---

[1] Defendant's Declaration of Lyle Lackey is unequivocally hearsay.

Mask Policy as a TEA-compliant "plan" and blaming any issues concerning the Mask Policy everything on the Governor and TEA, with JGISD's superintendent acting as mere foot soldier. Further, Defendants assert that their secret committee meetings to develop the Mask Policy are not subject to TOMA. This defense falls flat by simple examination of the minutes of the April 20, 2021, meeting, which includes the vote on "COVID *policies* as recommended by Committee and administration." (Italics added for emphasis.)

> Motion made by Cody Stanaland, seconded by Jeff Arnold to approve COVID policies and procedures as recommended by Committee and administration. All in favor.

*Page 2, April 20, 2021, JGISD Board of Trustees meeting minutes*

8. However, these minutes include no description of the policies and no detail provided at all. While state law does not dictate every minor detail of what the minutes of an open meeting must include, no case supports a mere mention of a subject without an iota of detail. Minutes must indicate each vote, order, decision, or other action taken, and *not* merely the subject. *See* Tex. Gov't Code § 551.021.

9. There is no public record of who was on the committee. Also notable is the fact that counter to their later assertions, it was JGISD's position on April 20, 2021 that the committee's Mask Policy was a "policy" as opposed to a "plan" (to the extent that the distinction matters at all).

10.     Defendants admit to forming a committee to create the Mask Policy and then failing to operate publicly. No committee meetings, records, or notification to the public were published to indicate to taxpayers that any of this was occurring.

11.     JGISD admits to creating this secret committee in private, a clear violation of TOMA. Defendants may claim to rationally follow TEA's guidance and cite the TEA Guidebook for Public Health Operations [ECF Doc 10-1, Appx.00009], however the evidence shows otherwise. The photos in Exh. 7 of *Plaintiffs' Amended Complaint*, JGISD clearly show that the Mask Policy "in scientific understanding of how the virus spreads;" and since parents were closed out of the process, JGISD certainly did not "engage parents" or "[communicate] transparently and matter-of-factly with relevant parties." [ECF Doc 10-1, Appx.000012 & Appx.000024]. TEA explicitly states, "Schools must comply with the governor's executive order regarding the wearing of masks." [ECF Doc 10-1, Appx.000003].

12.     Though JGISD states that it was merely following Governor Abbott's policy, JGISD clearly departed from that policy when it did not allow include the "children under 10" exemption from GA-29 in its plan.[2]

13.     Defendants then continue to claim that they did not have discretion and had to obey the Governor's orders until GA-34, which allowed them to modify the

---

[2] *See Defendant's 12(b) Motion to Dismiss,* ECF Doc. 9, page 15.

mask policies. Yet Defendant still has not addressed the exemptions for children under 10 years old from GA-29 which they chose to ignore, demonstrating its continued discretion in forming the JGISD Mask Policy. There was no such exemption found in their Mask Policy, counter to GA-29's directive. The school required all, regardless of age, to wear a mask. There is also no guidance on forming any "committees" found in TEA guidance or the Governor's orders. Therefore, they did not comply with the governor's executive order regarding the wearing of masks and clearly had discretion before following orders like GA-34. Defendants have not addressed these inconsistencies. Because JGISD did not follow Gov. Abbott's executive orders and TEA but rather developed its own policy, JGISD cannot claim that it simply adopted a plan developed by the state authorities, nor blame JGISD's superintendent. JGISD used its own discretion, and the creation was subject to TOMA in either case.

**B.     JGISD has discretion in implementation and enforcement of policies and violated Plaintiff's Fourteenth amendment rights under § 1983.**

14.    The proper vehicle for asserting violations of fundamental rights protected by the United States Constitution as amended by the Fourteenth Amendment is 42 U.S.C. § 1983. Plaintiffs have amended their complaint accordingly. JGISD used their illegally-formed policy to discriminate against C.L. and did not provide him any procedural due process when expelling him.

15. To state a claim under § 1983 against a school district, the "complaint must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an 'official policy' attributable to the school district's policymakers (3) 'was the moving force' behind it." *Bailey*, 425 F. Supp. 3d at 713.

16. Defendants cite *Jacobson v. Commonwealth of Massachusetts*, as if it gives them any rational support in enforcing the Mask Policy on C.L. at the door, but not the other situations like sports games or those shown in Exh. 7. The photos show that this sovereign is did not apply the logic of *United States v. Caltex,* where kicking C.L. off of the premises is "destroying the property of a few that the property of many and the lives of many more could be saved." It is quite shocking that Defendants cite *Prince v. Massachusetts* to characterize C.L. as exposing the community, when there is clear evidence of dozens of people at JGISD attending approved events without masks and with no social distancing. Exh. 7. This Court does not necessarily have to decide which measures are "likely to be the most effective for protection of the public against disease" as stated in *Jacobson*. JGISD is clearly applying their Mask Policy inconsistently by allowing some events and people to be arbitrarily unmasked and not social distance but barring C.L. from attempting to enter the premises.[3]

---

[3] *See Defendant's 12(b) Motion to Dismiss*, ECF Doc. 9, Page 19.

17.     Looking at the unequal implementation and enforcement of the Mask Policy in the photos in Exh. 7 and the circumstances of C.L. certainly "shocks the conscience" to the point where it "violates the decencies of civilized conduct". *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998). The Mask Policy irrationally requires masks to be worn when entering and exiting the building and when inside without social distancing as shown in photos in Exh. 7. JGISD implemented irrational and inconsistent enforcement of its Mask Policy when its agents barred C.L. from entering, while simultaneously approving "super-spreader" style events elsewhere on their campus. JGISD has not addressed the photos in Exh. 7.

18.     JGISD is willing to have hundreds of individuals in proximity without masks but C.L. cannot enter the building without a mask. Even if it is in "government interest" to take steps to prevent COVID spread, no reasonable person can look at Exh. 7 and find that this policy was implemented evenly and rationally.

19.     This suit would not have been filed if JGISD's agents had not sent home for the sin of walking into the school without a mask *and prevented from receiving a public education*, while at the same time allowing crowds of students to congregate closely *for unnecessary sports events*. And given ample opportunity, refused to recognize the absurdity.

20. TEA requires that the response needs to be "Based in the scientific understanding of how the virus spreads" and JGISD has clearly shown their capacity to understand how the virus works by implementing their policies so unevenly and irrationally. *See* [Doc 10-1, Appx. 000012]. C.L.'s constitutional right to equal protection was violated and the Mask Policy formed by JGISD was the moving force behind it.

21. JGISD may attempt to justify their constitutional violations in the name of safety, however this is nonsensical. The photos in Exh. 7 show they cannot make any such justification in the name of "public safety". JGISD held essentially "super-spreader" type recreational events without enforcing their Mask Policy, while preventing C.L. to even attend the normal school day, violating C.L.'s Fourteenth Amendment rights.

22. Defendants used this illegal policy as justification to effectively expel C.L. without any procedural due process. C.L. was not allowed into the school unless he complied and was not given any chance to be heard before his removal. Further, the photos in Exh. 7 of the Amended Complaint show the inconsistent application of disciplinary measures, violating C.L.'s constitutional rights to equal protection. JGISD rushed an irrational policy through illegally out of fears and chose to apply disciplinary measures in one case with C.L. and not apply them to others similarly situated. Exh. 7. This arbitrary and illegal application of their policy violated

C.L.'s rights to procedural due process and equal protection pursuant to § 1983 of the Fourteenth Amendment. Defendants' Motion to Dismiss should be denied.

## II.   ADDITIONAL JURISDICTIONAL SUPPORT

23.   Additionally, Defendants characterize the injury from the violations of Plaintiff's Constitutional rights as not "distinct", citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) and "undifferentiated," *United States v. Richardson*, 419 U.S. 166, 177 (1974).[4]

24.   Defendants' reliance on these cases is misplaced. The *Whitmore* petitioner's alleged injury was too speculative to invoke the jurisdiction of an Art. III court. *Whitmore,* 495 U.S. at 157. The petitioner's conviction and death sentence were final, and his claim was based on nothing more than conjecture that he may eventually secure federal habeas relief from his conviction of stabbing his victim ten times, was obviously problematic. *Id.* The Supreme Court found that no amount of evidence could establish that Whitmore's asserted future injury was 'real and immediate.' *Id*. at 160.

25.   Additionally, the *Richardson* respondent did not allege that he was suffering any concrete injury. 418 U.S. at 177.

26.   Defendants cite *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 605 (1992) to argue that a mere procedural violation is not an individualized harm.

---

[4] ECF Doc 9, page 21.

27. Plaintiff agrees a mere procedural violation is insufficient to be an "individual harm" . . . in the absence of real harm, or unequal treatment, or a statute that gives standing, all of which exist in this case. Defendant was disallowed from participating in public school events because he had no mask, but many others were allowed to participate in public school events without masks.

28. Certain procedures are directly tied to protection against a substantive harm. *Id.* The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).

29. Unlike the Petitioner in *Whitmore* and respondent in *Richardson,* the Plaintiff in this case has experienced actual injury in violation of his equal protection and due process rights in the Fourteenth Amendment. Plaintiffs have plead concrete injuries of violation of C.L.'s equal protection by being inconsistently treated compared to his peers in the application of the Mask Policy by being constructively expelled. Further, C.L.'s procedural due process rights were violated as he was not given an opportunity to be heard before his constructive expulsion. JGSID created an illegal, irrational, and inconsistent creation and implementation of the Mask Policy that JGISD had discretion in creating and enforcing in violation of TOMA and the United States Constitution.

30.   JGISD cannot claim they had no discretion when not following the orders they claim to follow.[5] JGISD cannot claim that the unequal treatment of constructively expelling C.L. was not "distinct" or "undifferentiated" in their enforcement of the Mask Policy while simultaneously holding indoor crowded school events without following their illegal Mask Policy.[6] *See Whitmore,* 495 U.S. at 157; *Richardson*, 418 U.S. at 177. The evidence of JGISD's discretion in the implementation and enforcement of their illegal Mask Policy provides unique and concrete injury to Plaintiff, as he cannot attend school without obeying the illegal policy that is being used to target him specifically.

31.   JGISD did not follow the Governor's Orders, TEA, TOMA, and the Constitution in creating and inconsistently implementing and enforcing their illegal Mask Policy. JGISD actions created actual injury to Plaintiff in humiliation, additional hardship in loss of education opportunity, and deprivation of constitutional rights in the illegal denial of access to his education.

32.   Plaintiff objects to the inability to participate in public education but for the unconstitutional inconsistently applied Mask Policy. *See Ne. Fla. Chapter of Associated Gen Contractors,* 508 U.S. 656, 665.

---

[5] Referring to GA-29 which included mask exemptions for children under 10, which JGISD did not include in their Mask Policy. ECF Doc 9, pg 24.
[6] Exh. 7 of Plaintiffs Amended Complaint.

33. Lastly, Plaintiff's Open Meetings Act claims should survive any of the Defendants' arguments. The Texas Attorney General's Open Meetings Handbook 2018 explains the state's interpretation of the Open Meetings Act. In its discussion of standing, the Attorney General's office explained that:

> "Standing conferred by the Act is broader than taxpayer standing, and a citizen does not need to prove an interest different from the general public, "because 'the interest protected by the Open Meetings Act is the interest of the general public.'" The phrase "any interested person" includes a government league, an environmental group, the president of a local homeowners group, a city challenging the closure of a hospital by the county hospital district, and a town challenging annexation ordinances."[7]

34. In *Hays Cty. Water Planning Pshp. v. Hays Cty.*, the 3rd Court of Appeals instructed, "This Court addressed the issue of standing for Open Meetings Act purposes in Save Our Springs, holding that both an alliance of interested citizens and one individual living in the affected area had standing under the Open Meetings Act. 41 S.W.3d 174, 177 (Tex. App. 2001).

35. Thus, Plaintiffs' valid Open Meetings Act claims give standing to keep this Court from dismissing the case.

---

[7] Paxton, Ken, *Open Meetings Handbook 2018*, p. 63, available online at https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/open-government/Open-Meetings-Handbook-2018.pdf (last checked June 18, 2021). Citations cleaned.

### III. NOTICE OF AMENDED COMPLAINT

36. As described above, Plaintiffs have amended their complaint and filed it concurrently with this Response. This First Amended Complaint includes substantial discussion of jurisdictional issues, and is incorporated by reference with this response.

### IV. PRAYER

Because the Defendants treated Plaintiffs unequally to the way that they treated other students, irrationally and supported only with an illegal policy developed contrary to Texas law, Plaintiffs ask the Court to deny dismissal of this case, and to continue with a scheduling order and allow prosecution on the merits.

Respectfully submitted,

>By: /s/ Warren V. Norred
>Warren V. Norred, Texas Bar No. 24045094
>wnorred@norredlaw.com
>515 E. Border; Arlington, Texas 76010
>P: 817-704-3984; F: 817-524-6686
>Attorney for Plaintiffs

CERTIFICATE OF SERVICE – I certify that on June 18, 2021, I filed this brief through the Court's efiling system to all counsel of record.

>/s/ Warren V. Norred
>Warren V. Norred